# DAVID ERIC COVINGTON

## V.

# SKILLCORP PUBLISHERS, INC.

Record No. 930354

January 7, 1994

Present: All the Justices

*Raymond Palmer (Thomas W. Wright,* on brief), for appellant.
*Gerard J. Roerty, Jr. (Susan C. Armstrong; Mays & Valentine,* on brief), for appellee.

JUSTICE WHITING delivered the opinion of the Court.

In this suit to rescind a settlement allegedly procured by fraud, we decide whether the trial court erroneously required the complainant to tender the amounts he received in settlement before proceeding with his rescission claim. Since the trial court sustained the defendant's demurrer and dismissed the suit, we state as true the facts alleged in the amended bill of complaint and in the exhibits attached thereto, and the fair inferences to be drawn therefrom. *Fun v. Virginia Military Inst.,* 245 Va. 249, 250, 427 S.E.2d 181, 181 (1993).

In August 1982, Skillcorp Publishers, Inc., a publisher of educational materials, employed David Covington as its exclusive agent in Virginia to market and sell its "Handwriting Skills K-8 Program" (the program) for a 20% commission on the gross amount of all sales in Virginia.

The contract provided that:

This agreement will be in effect for one year and will automatically be renewed for an additional one-year period unless either party wishes to terminate the agreement. The agreement may be terminated by either party by . . . a thirty-day notice of termination.

After Covington had obtained the requisite approval by state officials for the program's purchase by local public schools, Skillcorp terminated the contract effective April 20, 1983.

Thereafter, Covington sued Skillcorp for breach of contract. On June 21, 1985, in response to Covington's interrogatories, and under oath, Skillcorp listed the number of programs sold to public schools in Virginia from the beginning of Covington's contract through May 31, 1985. Relying on those answers "as to the volume of sales in Virginia generated by [his] efforts," Covington settled his case against Skillcorp for $22,394.45, "an amount relating to the sales reported,

the liability risk and the costs of litigation." After the exchange of mutual general releases and Skillcorp's payment to Covington of the agreed settlement amount, Covington's action was dismissed with prejudice on July 29, 1985.

Later, Covington discovered that Skillcorp's answers to his interrogatories substantially and materially understated the number of program sales in Virginia during the period in question. On March 16, 1989, Covington filed a multi-count bill of complaint seeking: (1) to rescind the settlement agreement because of Skillcorp's fraud and deceit in understating the program sales in Virginia; and, if rescission were granted, (2) to recover compensatory and punitive damages arising from Skillcorp's termination in breach of the contract.

Covington's third amended bill of complaint based his right to rescind the settlement on theories of actual fraud, constructive fraud, and mutual mistake of fact. The trial court sustained Skillcorp's demurrer to this amended bill of complaint based on the ground that Covington had failed to allege his "readiness, willingness, and ability to restore [Skillcorp] to the status quo by returning money received in the earlier settlement of this case." Covington appeals.

■ We have indicated that "[a] court of equity is always reluctant to rescind unless the parties can be put in status quo." *Adelman v. Conotti Corp.,* 215 Va. 782, 794, 213 S.E.2d 774, 781 (1975). However, we have never decided whether restoration of the status quo is a precondition to litigating the right to rescind. Where fraud is charged as a ground for rescission of a contract, the courts of other jurisdictions are in disagreement; some hold that a tender of restoration is a precondition to a right of action, others hold otherwise. 12 Samuel Williston, *A Treatise on the Law of Contracts* § 1530, at 652 (Walter H.E. Jaeger ed., 3d ed. 1970).

■ We agree with the latter view. In many rescission cases, the evidence may indicate that literal restoration is impractical upon rescission and the court may have to determine an appropriate method of restoration. *See Adelman,* 215 Va. at 794-95, 213 S.E.2d at 781-82 (directors' preferential stock treatment in return for their guaranty of corporate debt rescinded on condition that objecting stockholders obtain release of directors' liability to corporate creditor). Similarly, if the subject of restoration is money, the amount to be restored frequently cannot be determined until after hearing the evidence in support of rescission. *See Long v. Harrison,* 134 Va. 424, 447, 114 S.E. 656, 663 (1922) (after decreeing rescission, matter referred to commissioner to determine amount of consideration actually received by rescinding party).

■ Here, there is a sharp conflict between the parties as to the disparity between the amount that Skillcorp would have owed Covington had it correctly answered the interrogatories, and the amount it paid in settlement. The extent of that disparity may determine the issue of Covington's right to rescind. If the disparity is shown to be material, rescission may be granted. And, if restoration of the benefits of the settlement is required, the amounts of those benefits can then be determined and credited against any amount due Covington by Skillcorp. On the other hand, if Covington fails to establish a substantial disparity in the stated amounts of sales in Virginia during the period in question, he will not be entitled to rescind and there will be no need for restoration.

For these reasons, we conclude that the trial court erred in requiring Covington's pre-litigation tender of the consideration he received for the settlement.* Therefore, we will reverse the judgment of the trial court and remand the case for further proceedings consistent with this opinion.

*Reversed and remanded.*

---

* Our decision makes unnecessary a decision on Covington's claims of a violation of his due process rights under the federal and state constitutions.